UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAQSOOD ALI HAIDARI,

Petitioner,

v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT FIELD OFFICE
DIRECTOR,

Respondent.

CASE NO. 2:26-cv-00039-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. Dkt. No. 4. Having reviewed the petition, Respondent's Return (Dkt. No. 12), Petitioner's Traverse (Dkt. No. 17), and the relevant record, the Court DENIES Petitioner's petition.

## I.    BACKGROUND[1]

Petitioner is Maqsood Ali Haidari, a 30-year-old citizen of Afghanistan. Dkt. No. 14-2 (Record of Deportable/Inadmissible Alien) at 2. Respondent is identified, but not specifically

---

[1] Petitioner's petition provided little factual information beyond the date and location of his detention. *See* Dkt. No. 4 at 1. Consequently, the bulk of this recitation is drawn from Respondent's briefing and exhibits.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

named, as the Immigration and Customs Enforcement ("ICE") Field Office Director. Dkt. No. 4 at 1.

Petitioner was born and raised in Afghanistan. Dkt. No. 18 (Haidari Decl.) at 1. Petitioner avers that his ethnic group is Hazara, and that Hazara people "face different types of persecutions including Genocide." *Id.* On or about September 2, 2024, Petitioner entered the United States at the Calexico Port of Entry in Calexico, California, through a CBP One appointment. Dkt. No. 14-2 at 2, 3. Petitioner applied for admission to the United States and requested asylum. Dkt. No. 13 (Baz Decl.) ¶ 4. The United States Border Patrol placed Petitioner in expedited-removal proceedings and referred Petitioner to the United States Citizenship and Immigration Services ("USCIS") for a credible-fear interview. *Id.* On September 17, 2024, USCIS conducted a credible-fear interview. *Id.* ¶ 5. On September 24, 2024, Petitioner was served with a Notice to Appear ("NTA") (Dkt. No. 14-1), which charged Petitioner with a violation of Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* at 2. This provision of the INA defines as inadmissible any immigrant who, at the time of application for admission,

> is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title.

The NTA noted that an asylum officer had found that Petitioner had demonstrated a credible fear of persecution or torture. Dkt. No. 14-1 at 2. Petitioner was scheduled to appear before an immigration judge ("IJ") on October 10, 2024, in Calexico. *Id.* It is not clear from the record, however, whether Petitioner appeared at his October 10, 2024, hearing before the IJ.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

On October 6, 2024, ICE granted Petitioner parole and released him from custody. Dkt. No. 13 ¶ 7; Dkt. No. 14-3 at 7 (Interim Notice Authorizing Parole). Petitioner's parole was valid for one year and was conditioned upon Petitioner's compliance with the terms and conditions of his release. Dkt. No. 14-3 at 7. Petitioner's Notice Authorizing Parole advised him that "[p]arole is entirely within the discretion of ICE and can be terminated at any time for any reason." *Id.* Parole "[was] not an admission in lawful status." *Id.*

On January 27, 2025, Petitioner filed a Form I-589, an application for asylum and withholding of removal. Dkt. No. 13 ¶ 8. On April 24, 2025, Petitioner amended his application. *Id.* ¶ 9. On September 15, 2025, Petitioner appeared in San Diego Immigration Court for an individual hearing on his I-589 application. After the hearing, an IJ ordered Petitioner removed to Afghanistan. *See* Dkt. No. 14-4 at 2–3. The IJ denied Petitioner both asylum and withholding of removal. *Id.* at 2.

After his hearing, Petitioner avers that he "was really suffering from depression" and that he "decided to go to Canada without knowing the consequences." Dkt. No. 18 at 1.[2] On September 22, 2025, Petitioner was encountered at the Pacific Highway Port of Entry in Blaine, Washington. Dkt. No. 13 ¶ 11. Canadian Border Patrol returned Petitioner to the United States, where he was taken into custody by the United States Border Patrol. *Id.* Petitioner was subsequently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner has been detained at NWIPC ever since. Dkt. No. 4 at 1. On October 10, 2025, Petitioner timely appealed his order of removal. Dkt. No. 13 ¶ 12.

---

[2] Pursuant to 8 C.F.R. § 211.5(e)(1)(i), Petitioner's parole would automatically terminate upon his departure from the United States.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment guarantee of due process applies in deportation proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

## III.    DISCUSSION

### A.    Basis for Petitioner's Detention

Respondent argues, and Petitioner does not rebut, that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), "pending resolution of his removal proceedings." Dkt. No. 12 at 1. Because Petitioner has appealed his order of removal, his removal is not administratively final. *See* 8 C.F.R. § 1241.1. Petitioner does not take a definitive position on the authority that governs his detention, asserting only that he "is not held under 8 USC 1226(c)." Dkt. No. 4 at 3. In his Petition, Petitioner seems to suggest that he is detained under Section 1226(a) (*see id.* at 4), but

he does not definitively state as much, and he does not provide any opposition to Respondent's straightforward assertion (*see* Dkt. No. 12 at 1). Further, the Court sees no support in the record demonstrating that Petitioner is detained under Section 1226. The Court therefore concludes that Petitioner is detained under 8 U.S.C. § 1225(b)(2), which "mandates detention for an 'applicant for admission, if the examining immigration officer determines that a noncitizen seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 2d 1239, 1244 (W.D. Wash. 2025) (citing 8 U.S.C. § 1225(b)(2)(a)).

**B.    The *Banda* Factors**

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). However, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because balancing the *Mathews* factors does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided" and was "not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1106–07 (citation modified). Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention without a bond hearing under 8 U.S.C. § 1225(b) has become unjustifiably prolonged and thus violative of due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. C25-1282, 2025 WL 3466971 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom Belqasim v. Hermosillo*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).

Here, Petitioner does not discuss the *Banda* test, and Respondent provides a perfunctory application of it. *See* Dkt. No. 12 at 8. In line with prevailing practice in this District, the Court will apply the *Banda* test in determining whether Petitioner's detention without a bond hearing violates the Constitution.

### 1.    Total Length of Detention

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Here, when Petitioner first filed his petition for habeas relief, he had been detained for approximately three months. Dkt. No. 4 at 6. As of the date of this Order, he has been detained for almost six months. Respondent asserts that the length of detention "is well within constitutional bounds." Dkt. No. 12 at 8.

Petitioner's detention has not yet reached "the rough six-month threshold at which detentions become less and less reasonable." *L.B.O.M. v. Hermosillo*, No. C25-2695, 2026 WL 266068, at *3 (W.D. Wash. Feb. 2, 2026) (quoting *Perez v. Decker*, No. C18-5279, 2018 WL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

3991497, at *5 (S.D.N.Y. Aug. 20, 2018)) (citation modified); *see Odimara v. Bostock*, No. C24-572, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months. . . . [T]his first factor is neutral or, at most, weighs slightly in favor of [petitioner]."); *cf. Bojorge-Sequeira v. Geo Group Inc.*, No. C25-1807, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted* 2026 WL 285657 (Feb. 3, 2026) (finding first *Banda* factor "weighs slightly in favor of Respondents" where Petitioner had been detained for "approximately five months.").

Therefore, the Court finds that this factor weighs slightly in favor of Respondent.

### 2.     Likely Duration of Future Detention

The second factor for the Court to consider is the likely duration of future detention. *Banda*, 385 F. Supp. 3d at 1118. Petitioner maintains that the pending appeal of his removal creates "the absence of a foreseeable removal date . . . ." Dkt. No. 17 at 4. Respondent argues that "[t]here is no indication of indefinite detention; BIA appeals typically resolve within months, and removal can proceed promptly thereafter if affirmed." Dkt. No. 12 at 8.

Petitioner's position is more in line with prevailing law, not least because Respondent presumes that Petitioner is only entitled to an administrative appeal of his removal order. Courts in this District have construed the second *Banda* factor as a consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative *and judicial appeals*." *Hong v. Mayorkas*, No. C20-1784, 2022 WL 1078627, at *6 (W.D. Wash. Apr. 11, 2022) (quoting *Martinez v. Clark*, No. C18-1669, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019)). In finding that this factor weighed in favor of the petitioner, the *Banda* court noted that in that case, "Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer." *Banda*, 385 F. Supp. 3d at 1119.

Petitioner appealed his removal order on October 10, 2025. *See* Dkt. No. 12 at 8. In *Bojorge-Sequeira*, the court noted that the petitioner had appealed their removal order on October 27, 2025. *Bojorge-Sequeira*, 2026 WL 288378, at *5. On January 15, 2026, "[g]iven the length of time the appeals process can take, the [c]ourt f[ound] that the second *Banda* factor weigh[ed] in favor of [petitioner]." *Id.* Similarly here, "[i]t thus appears that Petitioner could potentially be facing two years or more of additional time in custody." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555997, at *5 (W.D. Wash. Aug. 30, 2022).

Therefore, this factor weighs in favor of Petitioner.

### 3. Conditions of Detention

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he or she is entitled to a bond hearing." *Diaz Reyes v. Wolf*, No. C20-0377, 2020 WL 6820903, at *6 (W.D. Wash. Aug. 7, 2020) (citation modified) (quoting *Jamal A.*, 358 F. Supp. 3d at 860), *report and recommendation adopted as modified*, No. C20-0377, 2020 WL 6820822 (W.D. Wash. Nov. 20, 2020), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021). Petitioner asserts that his conditions of detention are poor and prison-like:

> We are not allowed to have recreation; we go to the recreation Yard may be once a week. In addition to, the food is not properly cooked and it is not enough to sustain. . . . In addition to that; we are not given a proper treatment if you are sick.

Dkt. No. 18 at 2. Petitioner's description is in line with other characterizations of detention at NWIPC. *See, e.g.*, *Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *5 (W.D.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

Wash. Dec. 5, 2025) ("Petitioner demonstrates that the conditions at NWIPC [are] that of a prison," including "problems with food, medical neglect, and cleanliness").

Therefore, this factor weighs in favor of Petitioner.

### 4.     Delays in Removal Proceedings Caused by Petitioner

The fourth factor considers delays in the removal proceedings caused by the Petitioner. *See Banda*, 385 F. Supp. 3d at 1118. Petitioner does not present any argument on this factor one way or the other. Respondents assert that "[a]ny delay should be attributed to Petitioner's appeal to the BIA . . . , not government misconduct." Dkt. No. 12 at 8. A "delay" caused by an appeal is not generally considered dilatory conduct; a noncitizen has a right to an appeal. *See, e.g.*, *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); *Nguyen v. Scott*, No. C25-1988, 2026 WL 194232, at *4 (W.D. Wash. Jan. 26, 2026).

Therefore, this factor is neutral.

### 5.     Delays in Removal Proceedings Caused by Respondents

The fifth factor considers delays attributable to the Government. *See Banda*, 385 F. Supp. 3d at 1120. Here, "Petitioner does not point to any delays in his case occasioned by Respondents, and the record does not evince any. There is no basis for treating the absence of government-caused delay differently than the absence of petitioner-caused delay." *Nguyen*, 2026 WL 194232, at *4.

Therefore, this factor is neutral.

### 6.     Likelihood Removal Proceedings Will Result in Final Order of Removal

The sixth factor considers the ultimate disposition of Petitioner's removal proceedings. *See Banda*, 385 F. Supp. 3d at 1120. In *Toktosunov*, the court, in applying the sixth *Banda* factor, gave particular consideration to the fact that petitioner there "ha[d] prevailed before an immigration judge on a prior occasion." *Toktosunov*, 2025 WL 3492858, at *5. Here, even

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9

though it is Respondent who has previously prevailed before an immigration judge (*see* Dkt. No. 14-4), the principle is the same. "Although the appeal adds some uncertainty, the fact remains" that Respondent has successfully argued for Petitioner's removal in immigration court. *Toktosunov*, 2025 WL 3492858.

Therefore, this factor weighs in favor of Respondent.

### 7. Weighing the Factors

Having considered the *Banda* factors, the Court has found that two are neutral, two weigh in favor of Petitioner, and two—including the most important factor—weigh in favor of Respondent. Under such circumstances, the Court finds that the *Banda* factors point toward a finding that Petitioner's detention is not unlawful, and that he is therefore not entitled to habeas relief.

### C. Petitioner's Application for Court-Appointed Counsel

Petitioner has also filed an application for court-appointed counsel. Dkt. No. 8. Petitioner's motion is cursory, asserting only: "I am not well conversant with the legal matters and I don't have knowledge to do research in the law library. In addition to lack of clear understanding well about the laws." Dkt. No. 8 at 1. Given the disposition of Petitioner's petition, the request for counsel is moot. However, even if the Court were inclined to grant the habeas petition, the Court would still deny the request for counsel on its merits.

"There is no constitutional right to counsel in federal habeas proceedings." *Paz-Valenzuela v. Warden of the Golden State Annex Detention Facility*, No. C25-1834, 2025 WL 3633540, at *1 (E.D. Cal. Dec. 15, 2025). But "[c]ourts may appoint an attorney for an 'impoverished habeas petitioner' when 'the interests of justice so require.'" *Avila-Hebra v. Noem*, No. C25-3140, 2025 WL 3190608, at *1 (S.D. Cal. Nov. 14, 2025) (quoting *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir. 1984)). "In this assessment, courts evaluate a petitioner's

(a) 'likelihood of success on the merits' and (b) 'ability . . . to articulate [their] claims *pro se* in light of the complexity of the legal issues involved." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). Here, Petitioner has not prevailed on the merits of his petition. Further, "Petitioner's proffered difficulties in presenting this case without the assistance of counsel and arising from his status as a detained immigrant are shared with many other habeas petitioners." *Paz-Valenzuela*, 2025 WL 3633540, at *1. Therefore, Petitioner has not demonstrated that he is entitled to Court-appointed counsel.

**IV.    CONCLUSION**

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 4) and Application for Court-Appointed Counsel (Dkt. No. 8) are DENIED.

Dated this 18th day of March, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11